HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIE POTTER,

    Plaintiff,

    v.

AMERICA'S SERVICING COMPANY, et al.,

    Defendants.

CASE NO. C13-1129RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion to dismiss from Defendant America's Servicing Company ("ASC") and another motion to dismiss from Defendant WMC Mortgage LLC ("WMC").  No one has requested oral argument, and the court finds oral argument unnecessary.  For the reasons stated herein, the court GRANTS both motions to dismiss.  Dkt. ## 23, 24.  The court DISMISSES this action with prejudice and directs the clerk to enter judgment for Defendants.

## II.  BACKGROUND

The court has already dismissed this case once, in a February 3, 2014 order (Dkt. # 20) that reluctantly permitted Plaintiff Marie Potter to amend her complaint.  In the amended complaint, Plaintiff abandoned claims against every Defendant except ASC, and named a new Defendant, WMC.

ORDER – 1

In February 2006, Ms. Potter borrowed $414,000 from WMC's corporate predecessor, securing the loan with a deed of trust to her residential property in Brier, Washington. The original loan carried a 9.25% variable interest rate, but that rate was subject to adjustment beginning in March 2008. Ultimately, depending on fluctuations in the London Interbank Offered Rate ("LIBOR"), the interest rate could rise as high as 15.75% per year. Ms. Potter alleges that WMC promised her that she could repay that loan, and also promised her that she could receive a fixed rate loan "shortly after [she] signed her initial variable rate loan," but that WMC never followed through with this promise. Amend. Compl. ¶ 44.

Interest rates rose, and Ms. Potter had difficulty making payments. She filed for bankruptcy protection and faced foreclosure.

At some point, Plaintiff negotiated with ASC, the loan's servicer, for a modification of her loan. She signed a loan modification agreement in November 2010, which named Wells Fargo Bank, N.A., as her lender. The modification agreement made several changes to her original note. It changed the maturity date from March 2036 to June 2046. It increased her principal balance to just over $512,000, stating that this amount "include[d] all amounts and arrearages that w[ould] be past due as of the Modification Effective Date," which was July 2010. It decreased her interest rate to 2% for the first five years of the loan, with a gradual increase to 4.84% for the final 29 years of the 36-year modified loan. The agreement expressly "supersed[ed] the terms of any modification, forbearance, Trial Period Plan or Workout Plan" between the parties.

As was the case with WMC and the original loan, Plaintiff alleges that ASC made misrepresentations about the modified loan. She alleges that ASC never told her that it would raise her principal amount by $100,000. She attaches to her complaint an "accounting" that ASC allegedly prepared, that shows her principal balance climbing from about $412,000 on February 9, 2011 to $512,000 on February 10, 2011. She

ORDER – 2

contends that there was no basis for this leap, and that ASC told her that her principal amount would not increase at all in the modified loan.

From these allegations, she purports to state three causes of action against WMC and three against ASC. She alleges that WMC's promises that she was entering a loan that she would be able to repay and that it would soon provide her with a fixed-rate loan make it liable for promissory estoppel. She contends that the loan was substantively unconscionable. She also contends that WMC breached its agreement to provide her with a new loan, or at least violated its duty of good faith and fair dealing. She alleges that ASC engaged in "Unconscionable Behavior" by increasing her principal balance by $100,000, that the same act violated the Washington Consumer Protection Act ("CPA") as did ASC's false promise that her principal would not increase in her modified loan, and that her reliance on that false promise gives her a claim for promissory estoppel.

Both Defendants filed motions to dismiss, contending that Ms. Potter has not stated a claim against them.

### III.  ANALYSIS

Defendants invoke Fed. R. Civ. P. 12(b)(6), which permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from its allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). The court typically cannot consider evidence beyond the four corners of the

ORDER – 3

complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**A.     Plaintiff's Claims Against WMC**

All of Ms. Potter's claims against WMC are time-barred. The court first considers her claims based on WMC's oral promises. There is no allegation that the parties ever reduced to writing WMC's promise that Ms. Potter would be able to repay her original loan or its promise that it would provide her a new fixed-rate loan. WMC allegedly made those promises at or before the time she entered her new loan, which was in February 2006. She did not name WMC as a Defendant in this case until she filed her amended complaint in February 2014. Even if her claims against WMC somehow related back to her original complaint in this action, that complaint came in July 2013. Washington actions based on a breach of oral promises, including promissory estoppel actions, must commence within three years of breach. RCW 4.16.080(3); *Cent. Heat, Inc. v. Daily Olympian, Inc.*, 443 P.2d 544, 548 (Wash. 1968). Ms. Potter attempts to claim that she did not discover her claims based on WMC's oral promises until more recently, but her complaint puts those allegations to rest. By November 2010, more than three years before she sued WMC, she had extinguished her loan from WMC by entering the modified loan with Wells Fargo. She could not have discovered WMC's alleged breach of its promises after that time. She has no timely claims based on WMC's oral promises.

Her claim that the original loan was substantively unconscionable is subject to a six-year statute of limitations, RCW 4.16.040(1), but it accrued the moment she entered the loan. She cannot plausibly argue that she discovered the allegedly unconscionable terms of the loan after she signed the loan agreement in February 2006, and she did not sue WMC until February 2014.

ORDER – 4

Even if Ms. Potter's claims were timely, they would not withstand WMC's motion to dismiss. Unless WMC promised to pay Ms. Potter's loan for her, an allegation that appears nowhere in her complaint, a promise that Ms. Potter would be able to repay her loan is not a promise on which she could justifiably rely. She was responsible for repaying her loan, and the terms of repayment were plainly set forth in the loan itself. If she was unable to repay her loan, she could not have reasonably relied on WMC's alleged promise to the contrary.

As to WMC's promise to provide her a new fixed-rate loan, her complaint contains no allegation that she demanded a fixed-rate loan from WMC. The promise WMC allegedly made was that "she could receive a fixed rate loan shortly after she signed her initial variable rate loan," Amend. Compl. ¶ 44, not that WMC would unilaterally offer such a loan. Absent any allegation that she demanded the loan, she has no claim against WMC premised on its alleged promise to provide it.

As to Ms. Potter's allegation that the loan was substantively unconscionable, the analysis underlying the court's conclusion that the modified loan was not unconscionable from the February 3 order applies equally here. The terms of the original loan do not shock the conscience.

### B.     Plaintiff's Claims Against ASC

With one exception, which the court will soon consider, Ms. Potter raises no claim or argument against ASC that the court did not address in the February 3 order. That order applies with equal force to Ms. Potter's renewed attempt to assert a promissory estoppel claim against ASC and any CPA claim or bad faith claim premised on ASC's promise that it would not increase her principal. As the court noted in its prior order, whatever promises ASC allegedly made to bring her to the bargaining table with respect to her modified loan, she cannot overcome the simple fact that the modified loan agreement plainly states that her principal balance had increased by about $100,000. She

ORDER – 5

was not compelled to sign that loan agreement, which dispelled all of ASC's allegedly false promises.

Ms. Potter's amended complaint adds substantially more detail about her claim that the modified loan is substantively unconscionable because it increased her principal balance by $100,000 without reason. The problem with that claim is that she did not enter the loan with ASC, she entered it with Wells Fargo Bank, N.A. She has not sued that entity, and she cannot sue ASC over a loan to which ASC is not a party.

The court observes, moreover, that ASC has provided evidence that is neither in Ms. Potter's complaint nor subject to judicial notice that plausibly explains why Ms. Potter's loan principal increased by $100,000. The evidence suggests that the increase was because of unpaid interest and other charges that accrued as Ms. Potter was in foreclosure proceedings. The court suggests no opinion on the validity of that evidence, because the court cannot do so to resolve a Rule 12(b)(6) motion. Ms. Potter should, however, consider the possibility that she would be sanctioned via Federal Rule of Civil Procedure 11 if she attempted to sue Wells Fargo over the allegedly unconscionable terms of her modified loan without mentioning that evidence or considering its impact on her claim that Wells Fargo had no basis to increase the principal balance of her loan.

## IV.  CONCLUSION

For the reasons previously stated, the court GRANTS Defendants' motions to dismiss. Dkt. ## 23, 24. Plaintiff could not salvage her claims if the court granted her an additional opportunity to amend her complaint, and the court accordingly DISMISSES this action with prejudice. The clerk shall enter judgment for Defendants.

DATED this 23rd day of July, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 6